352

PEOPLE OF PUERTO RICO EX REL. DR. JOSÉ MENDÍN SABAT, Plaintiff and Appellant, *v.* SERGIO SEIJO ET AL., Defendants and Appellees.

No. 5996.   Argued April 14, 1932.—Decided April 26, 1932.

*A. Ortiz Toro, Acting Attorney General; R. Rivera Zayas, L. Tormes,* and *A. Reyes Delgado* for appellant. *Bolívar Pagán* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The People of Puerto Rico, at the instance of Dr. José Mendín Sabat, Director of Charities of the Municipality of Arecibo, brought a *quo warranto* proceeding in the district court against Sergio Seijo, Antonia Brandi, and Augusto Padilla, praying that the court adjudge that the defendant Sergio Seijo had no right to the office of Mayor of the Municipality of Arecibo, and that the defendants Antonia Brandi, treasurer and school director, and Augusto Padilla, director of public works, were not entitled to substitute him in said office, and that the relator, in his capacity as director of charities, was the person entitled to such substitution.

That Seijo was elected Mayor of Arecibo and is now and was holding that office when the proceeding herein was commenced, and that the relator and the other defendants were and still are director of charities, treasurer and school director, and director of public works, respectively, are admitted facts. Nor is there any doubt that in case of a vacancy it would be incumbent in the first place on the director of charities and then, successively, on the treasurer-school director and the director of public works to discharge *pro tempore* the office of mayor; nor that the director of charities has demanded from Seijo the delivery of the office and that Seijo has refused to deliver the same, it also being

a matter of common knowledge the antagonistic attitude of the other defendants towards the relator. The questions in controversy are whether there is really a vacancy in the office of mayor by reason of Seijo having been duly removed by the municipal assembly, and whether the relator, despite the fact that he had been regularly appointed director of charities was, when the proceeding herein was instituted, and still is suspended from his office by competent authority.

In order to prove that the defendant Seijo had been removed from his office of mayor, the relator offered in evidence a certified copy of the proceedings that took place in the Municipal Assembly of Arecibo as the same appear from the return filed in a certiorari proceeding had before the same district court, and the following occurred:

"Attorney Bolívar Pagán: I object to the admission of this evidence. I am going to cite the law and jurisprudence showing that this is not admissible in evidence in this case. (He argued.) It is not primary evidence either.

"Judge: For what purpose is the evidence offered?

"Attorney Rivera Zayas: To prove the third and fourth averments of the information. (He argued.)

"Judge: The court would admit these documents conditionally to give them the probative value that they may have, the parties to argue, on the merits, the question of whether or not they constitute admissible evidence; but it would prefer the primary evidence, that which is attached to the record.

"Attorney Rivera Zayas: That is it. That is very well.

"Judge: The court admits that evidence now subject to the condition that the parties may discuss its admissibility when arguing the case on the merits, and it will save an exception to the party feeling aggrieved by the ruling of the court."

Thereafter the court in its statement of the case and opinion said:

"The document, on whose genuineness we are to pass, is a detailed report of certain alleged proceedings begun in the Municipal Assembly of Arecibo regarding an impeachment trial that culminated in the removal from office of Mr. Sergio Seijo as Mayor of Arecibo,

which report is signed by seven out of the eleven assemblymen composing said body.

"The testimony offered by the relator tended to prove that on September 1, 1931, at about two o'clock in the afternoon, José Toledo García, president of the municipal assembly, called a meeting of the other members thereof which was to take place the next day; that when the assemblymen met on the evening of September 2, 1931, and the acting secretary of the municipality, José Santos Rodríguez, being sick, another person was appointed to temporarily act as such; that as *the official minute book of the assembly* could not be located, the nine members present of said body agreed to go on with the proceedings and subsequently decided to present as proof thereof the so-called *return* signed by the assemblymen themselves.

"Hence the writings that comprise the document called *return* are not *certified copies* of the original acts recorded in the *official minute book.*

"On the other hand, the defendants introduced in evidence a certificate issued by the acting municipal secretary, attesting to the fact that according to the *official minute book,* the Municipal Assembly of Arecibo has not held any *official meeting* from July 9, 1931, up to the date of the issuance of the certificate, or December 22, 1931.

"Thus, on the one hand we have seven assemblymen signing the so-called return, which in their judgment contains all the proceedings of the assembly in regard to the impeachment and the removal of Mayor Seijo; and on the other we have a certificate issued by the officer in charge of the official minute books, saying that no meeting has been held.

"The Municipal Law in force provides:

"'Section 25.—That the municipal assembly shall keep a record of its *proceedings,* resolutions and such ordinances as it may approve, *in minutes to be kept in bound and folioed books made available by a certificate of the president and the secretary,* on the first available page of each book, stating the number of blank pages contained in each of said books. Such books shall be kept by the *secretary of the assembly and shall constitute records of the same character and nature as the minutes of the House of Representatives of Porto Rico.'* (Italics ours.) Laws of 1928, p. 352.

"The Organic Act of Puerto Rico, in referring to the Insular Legislature, prescribes:

"'Section 34.—*     *     *     *     *     *

"'Each house shall keep a journal of its proceedings, and may, in its discretion, from time to time publish the same, and the yeas

and nays on any question, shall, on the demand of one-fifth of the members present, be entered on the journal.'

"In conformity with the foregoing constitutional precept, the Political Code provides that the Journal of each House of the Legislative Assembly shall be authenticated by the signature of the presiding officer and respective clerk thereof. Section 27, Political Code.

"It is further provided by our Organic Act that *the fact* of signing the presiding officer of each House all *bills* and *joint resolutions* shall be entered on the journal. And this journal, or the published statutes or resolutions, or certified copies of the originals thereof issued by the clerk from the journal constitute the only means of proving the proceedings of the Legislative Assembly. Subdivision 2, section 69, Law of Evidence.

"If the *minute books* of the municipal assemblies constitute records of the same character and nature as the journals of the House of Representatives of Puerto Rico (section 25, Municipal Law), the admission of evidence extrinsic to said minute books must be governed by the same rules relating to the journals of that House.

"Similarly, as it would be impossible to prove the proceedings of either House of the Legislature of Puerto Rico by means of the verbal or written statements of the legislators—even though the number of the signers thereof constituted a majority of the total membership— where such proceedings do not appear in the journal, so also are inadmissible writings whereby it is attempted to prove the acts of a municipal assembly where such acts do not appear in the minute book of the municipal assembly.

"The Law of Evidence prescribes the manner in which the acts of a municipal corporation of Puerto Rico may be proved, thus:

" 'Section 69.—Other official documents may be proved as follows:

" '1.    *    *    *    *    *    *    *

" '2.    *    *    *    *    *    *    *

" '3.    *    *    *    *    *    *    *

" '4.    *    *    *    *    *    *    *

" '5. Acts of a municipal corporation of Porto Rico, or of a board or department thereof, by a copy certified by the legal keeper thereof, or by a printed book published by the authority of such corporation.' Law of Evidence, Revised Statutes, p. 285.

"Our Supreme Court in its decision rendered on January 25, 1932, in the case of *People* v. *Márquez* has construed subdivisions 5

and 6 of section 69 of the Law of Evidence. That case was a prosecution for rape and in order to prove the age of the prosecutrix the district attorney offered in evidence a certificate issued by the secretary-auditor in charge of the Civil Register of San Sebastián. In referring to this document our highest Court said:

" 'In our view, the certificate was not admissible because it was not a true and faithful copy of the birth registration, as claimed by the defendant, and hence it lacked any legal force. In fine, that the birth record of the prosecutrix, Marcelina Soto, could not be considered, by reason of the form in which it was presented, as having been introduced in evidence.

" 'The Law of Evidence is clear. Section 48 thereof provides that every public officer having the custody of a public document is bound to furnish, on demand, a certified copy of it. And subdivisions 5 and 6 of section 69, in establishing the manner of proving official documents, provide: "5. Acts of a municipal corporation of Porto Rico, or of a board or department thereof, by a copy certified by the legal keeper thereof, or by a printed book published by the authority of such corporation. 6. Documents of any other class in Porto Rico, by the original, or by a copy, certified by the legal keeper thereof." '.'

" *      *      *      *      *      *      *

"Therefore, the documents offered in evidence not being certified copies of the originals recorded in the minute book of the municipal assembly, and it appearing on the contrary from said books, that no resolution has been entered thereon from July 9, 1931, until the present time, the conclusion is unavoidable that the document designated as 'Return of the Municipal Assembly of Arecibo' is not admissible in evidence in this case."

Thus upon the evidence being rejected, the case collapsed, and as a logical consequence the petition was denied. We have repeatedly said that it is not good practice to reserve the decision upon the question of whether or not any particular evidence is admissible until after the cause has been finally submitted. Such question should be determined during the trial. If it is really a difficult question, it is preferable to suspend the hearing for such time as may be absolutely necessary to consider and decide it, and then proceed with the trial.

The appellant in its brief assigns as error the ruling of the court and argues the assignment extensively. The appellees also argue ably the same question in their brief.

The case of *People v. Márquez,* 43 P.R.R. 43, cited by the lower court, is inapplicable. There the certificate had been issued by the municipal secretary, and it was rejected because it was not an exact copy of the original thereof. Here the originals themselves were offered and they were rejected because they were not copies issued by the officer who, according to the law, should have kept the originals in his custody; an officer who had also issued a certificate denying the existence of the originals as part of the records kept by him. We are dealing, then, with distinct cases.

There is no doubt that under the provisions of the Organic Act and the Municipal Law cited by the district court, the acts of the municipal assemblies in Puerto Rico are entered in the minute books kept by and under the custody of the municipal secretary, who is an officer appointed by the mayor. There is no question, either, that in accordance with the provisions of the Law of Evidence cited also by the trial judge, the mode of proving those acts is by certified copies thereof issued by the secretary.

That is the normal and general rule. But there are exceptions. The appellant maintains, and correctly so in our opinion, that the case at bar is included among these.

Let us examine the facts. As already stated, the documents in question had been presented to the same district court in the form of a return in a certiorari proceeding. The return reads thus:

"District Court of Arecibo.—Sergio Seijo v. The Municipal Assembly of Arecibo.—Civil Case No. 12733.—Certiorari.—Return of the Municipal Assembly of Arecibo, P. R.—Municipal Assembly of Arecibo, Puerto Rico.—Special Session of November 3, 1931.

"RESOLUTION.—To determine what documents constitute the Return of this Municipal Assembly to the writ of certiorari issued by the Hon. District Court of Arecibo in Civil Case No. 12733, Sergio

Seijo v. Municipal Assembly of Arecibo, P. R., and for other purposes.

"WHEREAS, this Municipal Assembly in considering the charges brought by Martín Martínez and Jovito de la Rosa against Sergio Seijo, Mayor of Arecibo, found the latter guilty of the charge brought against him, of immoral and unlawful conduct on several counts, and on September 15, 1931, finally removed him from the office of Mayor of Arecibo;

"WHEREAS, in order to review the impeachment proceeding which terminated in his removal the said Sergio Seijo has applied to the Hon. District Court of Arecibo for a writ of certiorari and said court has ordered that the proceedings had in the same impeachment be sent up to be reviewed by the court;

"THEREFORE, *be it Resolved by the Municipal Assembly of Arecibo, P. R.—*

"*First:* That the return of said writ of certiorari be submitted by this Municipal Assembly of Arecibo, P. R., to the Hon. District Court of Arecibo, certified by the members of the Assembly present at the session of today, since the acting secretary, Mr. José Santos Rodríguez, although requested to attend, has refused to do so.

"*Second:* The said return shall consist of all the documents, orders, citations, acts, and resolutions adopted by this Municipal Assembly in said impeachment proceeding; and there are hereby submitted to the Hon. District Court of Arecibo the following documents which are in the immediate custody of Mr. José Toledo García, president of this Assembly:

"1. Statement of charges, original, filed with the President of the Assembly, Mr. José Toledo García, against Sergio Seijo, in his capacity as Mayor of Arecibo, by Martín Martínez and Jovito de la Rosa, and an affidavit of service of notice thereof.

"2. Original call issued by the President of the Assembly, Mr. José Toledo García, on September 1, 1931, summoning the Municipal Assembly of Arecibo to a special session to consider the aforesaid charges.

"3. Copies of the notices which, at the direction of the president of the Assembly, were served on Mr. Sergio Seijo, the impeached mayor, and José Santos Rodríguez, acting secretary of the Municipality of Arecibo, and delivered to them on September 1, 1931, by José María Román, as also the certificate of service executed by the latter on oath.

"4. The original report of a committee appointed by the Assembly to examine the said charges and the original resolution of the Assembly adopted November 2, 1931, taking cognizance of the impeachment proceeding instituted, setting a date for the mayor to answer, and a date for the hearing of the charges, and temporarily suspending him from office and salary and appointing as his substitute the Director of Charities, Dr. José Mendín Sabat.

"5. The original summons, together with the return of service thereof, issued to the impeached mayor over the signatures of the assemblymen, in accordance with a resolution adopted in the session of September 3, 1931, and served on Mr. Sergio Seijo by Mr. Francisco Morales Colón, deputy marshal of the Municipal Court of Arecibo, on September 3, 1931, as appears from the said return of service sworn to before the Municipal Judge on September 14, 1931.

"6. The original call, together with the return of service thereof, sent by the President of the Municipal Assembly of Arecibo, summoning the latter to a special session to continue on September 14, 1931, the impeachment proceeding instituted against the mayor, Mr. Sergio Seijo.

"7. Copies of the notices sent by the president of the Municipal Assembly to the impeached mayor and to the acting secretary, respectively, Mr. Sergio Seijo, and Mr. José Santos Rodríguez, and served on them by Mr. José María Román, notifying them anew of the date set for the hearing of the proceeding.

"8. The original statement of the case and opinion delivered by the reporting committee appointed by the Assembly at the session held on September 14, 1931, and unanimously approved by the Assembly on September 15, 1931.

"9. The original resolution of the Municipal Assembly of September 15, 1931, approved on the first, second, and third readings thereof, in a voting by roll call, adopting the statement of the case and opinion and removing the Mayor of Arecibo, P. R., Mr. Sergio Seijo, from his aforesaid office, together with a certificate of service sworn to by the said Francisco Morales Colón before the Municipal Judge on September 16, 1931.

"10. The original affidavits subscribed by the secretary *pro tem.* of the assembly, Mr. Tomás Méndez, and the stenographer, Mr. Jesús Rosado, as made at the session of September 14, 1931.

"11. A certificate of the minutes prepared by the Municipal Assembly of Arecibo through its secretary *pro tem.*, Mr. Tomás Méndez, and its president, Mr. Toledo García, and approved by the Assembly

during the sessions held on September 3, 14, and 15, and November 2, 1931, and subscribed by all the assemblymen present before the Hon. Municipal Judge of Arecibo.

"*Third:* That the original of this act be attached to said return together with a certificate of the Executive Secretary of Puerto Rico, attesting to the identity of the present members of the Municipal Assembly of Arecibo, the original call issued for this proceeding, and the original resolution adopted by the Municipal Assembly of Arecibo on November 2, 1931.

"*Fourth:* That after this resolution shall have been approved and after the same shall have been signed by all the assemblymen present and their signatures authenticated by the Hon. Municipal Judge, the aforesaid documents be delivered by the president of the Assembly to the Hon. District Court of Arecibo, together with a motion which shall be prepared by counsel for this Assembly, for the appearance of this body.

"(Signed) José Toledo García, President of the Municipal Assembly of Arecibo, P. R.—Tomás Méndez, Secretary *pro tem.*—M. Cortés Nieves.—José Cruz Gerena.—(On the back) Tomás García.—Santos Pérez.—Teodoro Villanueva.—Alfredo Martínez.

"*Affidavit* No. 11634.—The foregoing signatures have been affixed to the above resolution by Messrs. José Toledo García, president of the Municipal Assembly of Arecibo, Tomás Méndez, secretary *pro tem.* thereof, and Manuel Cortés Nieves, José Cruz Gerena, Tomás García García, Teodoro Villanueva, Santos Pérez Lugo and Alfredo Martínez, municipal assemblymen of Arecibo, personally known to me. The act of signing took place in the assembly room of the Municipal Assembly of Arecibo, where the aforesaid gentlemen were holding a special meeting.—Arecibo, P. R., November 3, 1931.—(Signed) Puro Girau, Municipal Judge of Arecibo.—(There appears the seal of the Municipal Court of Arecibo and an Internal Revenue stamp of the value of twenty-five cents duly canceled.)"

Then follow all of the documents. Those grouped under No. 11 begin thus:

"Municipal Assembly of Arecibo, P. R.

"We, José Toledo García, president of the Municipal Assembly of Arecibo, P. R., Manuel Cortés Nieves, Alfredo Martínez, Santos Pérez Lugo, Ernesto Viñas, José Cruz Gerena, Tomás García, Teodoro Villanueva and Serafín Orama, municipal assemblymen of Arecibo, P. R., and Tomás Méndez, secretary *pro tem.* of said body, as-

sembled in a special session held in the assembly room of the Municipal Assembly in the City Hall of Arecibo, P. R., this 2nd day of November, 1931, pursuant to a call issued by the President of the Municipal Assembly of Arecibo, P. R., for the purpose of preparing the return to be sent to the Hon. District Court of Arecibo, in compliance with the writ of certiorari issued by said Hon. Court in the case of Sergio Seijo against the Municipal Assembly of Arecibo,. P. R., DO HEREBY CERTIFY:

"*First:* That in the possession and custody of José Toledo García, president of the Municipal Assembly, there is a minute book, authorized by this Municipal Assembly of Arecibo, P. R., to record all the proceedings and resolutions of this Assembly in the impeachment case instituted by Martín Martínez and Jovito de la Rosa against Sergio Seijo, Mayor of Arecibo, P. R., from which book appear the following particulars, literally transcribed:

"A.—Act of Authorization of the Book.

"We, José Toledo García, president of the Municipal Assembly of Arecibo, P. R., and Tomás Méndez, secretary *pro tem.*, appointed by said Assembly to act as secretary of the same in the absence of the acting secretary, Mr. José Santos Rodríguez, who has not appeared because of illness, and Manuel Cortés Nieves, Teodoro Villanueva, José Cruz Gerena, Ernesto Viñas Valés, Alfredo Martínez, Serafín Orama,. Santos Pérez Lugo and Tomás García García, municipal assemblymen of Arecibo, P. R., DO HEREBY CERTIFY: That this book entitled No. 1 (number one), Minute Book of the Judicial Sessions of the Municipal Assembly of Arecibo, P. R., will be used to record the proceedings, acts, resolutions and orders adopted by the Municipal Assembly of Arecibo, P. R., in the impeachment brought against the Mayor of Arecibo, P. R., Mr. Sergio Seijo, on the charges filed against him by Mr. Martín Martínez and Jovito de la Rosa; that said book has eight index folios that will not be used, and pursuant to this authorization it will be paged from number one, to number one hundred and eighty-four inclusive, and that it is thus authorized for the purposes above indicated. (Signed) José Toledo García, Pres. of the Municipal Assembly, Tomás Méndez, Secretary *pro tem.*, M. Cortés Nieves, Teodoro Villanueva, Alfredo Martínez, S. Orama, José Cruz Gerena,. E. Viñas, Tomás García, Santos Pérez, Assemblymen.

"B.—Act number 1, Municipal Assembly of Arecibo.

"Special Judicial Session.

"In the city of Arecibo, P. R., at . . . ."

The certification concludes as follows:

"WE CERTIFY, finally, that the Minute Book from which the foregoing particulars have been transcribed and the original documents exhibited herewith are in the possession of the Municipal Assembly of Arecibo, under the immediate custody of its President, Mr. José Toledo García, inasmuch as the Acting Municipal Secretary of Arecibo, Mr. José Santos Rodríguez, has refused to act during this proceeding; all which, as well as all the documents pertaining to the proceeding herein, we, the undersigned, certify.

"And to be submitted to the Hon. District Court of Arecibo as the return of the writ of certiorari No. 12733 of said Court, we issue these presents, at Arecibo, P. R., this 3d day of November, 1931, in the assembly room of the Municipal Assembly of Arecibo, at the City Hall. (Signed) José Toledo García, President of the Municipal Assembly; Tomás Méndez, Secretary *pro tem.;* Alfredo Martínez, M. Cortés Nieves, Santos Pérez, José Cruz Gerena, Tomás García, Teodoro Villanueva.

"Affidavit number 11633. I, Puro Girau, do hereby Certify: that while I was in the City Hall of Arecibo, I was called by the President of the Municipal Assembly of Arecibo, P. R., Hon. José Toledo García, who informed me that a session of the Municipal Assembly of Arecibo, P. R., was in progress, and that the aforesaid body wanted me to take an affidavit as to the authenticity of the signatures of the assemblymen, who approved the foregoing transcript, and accordingly I certify that, being assembled in the assembly room of the Municipal Assembly of Arecibo, P. R., Messrs. José Toledo García, Manuel Cortés Nieves, Tomás García, José Cruz Gerena, Teodoro Villanueva, Alfredo Martínez, and Santos Pérez Lugo, whom I personally know as Municipal Assemblymen of Arecibo, and Mr. Tomás Méndez, secretary *pro tem.* of said body, they did sign in my presence the foregoing certificate, covering twenty-nine sheets of legal cap; I further certify that the signatures appearing on said certificate are the genuine signatures of the aforesaid gentlemen. Given in the assembly room of the Municipal Assembly of Arecibo, at Arecibo, P. R., this 3d day of November, 1931.—I certify that the said gentlemen swore to the correctness of the aforesaid transcript.— (Signed) Puro Girau, Municipal Judge. (There is an I. R. stamp of the value of 25¢, canceled; also the official seal of the Municipal Court of Arecibo.)"

Was the Municipal Assembly of Arecibo empowered to act as it did?

This was an impeachment proceeding against the mayor. The municipal secretary appointed by the mayor had refused to act. The minute books of the municipality were not placed at the disposal of the assembly, nor found by the latter in the search it made. Under those circumstances, in our opinion the assembly was justified in appointing another person to act as secretary. Otherwise it would have failed to discharge a duty imposed by law, in allowing the default of an officer to make ineffectual its own and exclusive jurisdiction.

Perhaps the absence of the secretary from the first session would not have been enough to characterize his attitude as rebellious, inasmuch as he alleged that he was sick, but the manner in which he conducted himself afterwards shows beyond all doubt that his firm and deliberate purpose was not only to abandon his duty to the assembly, but also to obstruct the latter in every way possible so that it might not act validly in establishing the charges brought against the mayor.

Under the above circumstances, the following authorities uphold the power of the assembly to appoint, as it did, not the municipal secretary—for that right pertains to the mayor—but a secretary to act as such in the impeachment proceeding: section 36 of the Code of Civil Procedure, Dillon's Municipal Corporations, vol. II, p. 876, *People* v. *Rodríguez et al.*, 37 P.R.R. 397, *Attorney General* v. *Crocker*, 138 Mass. 214, and *State* v. *McKee*, 25 Pac. 292. The opinions in the cases from Massachusetts and Oregon, the latter reported in the Pacific Reporter, are extensively quoted in the appellant's brief.

Moreover, the assembly was extremely cautious in not confining itself to authenticate its acts by the certificate of the secretary, and in obtaining the cooperation given by the municipal judge, as also in adhering as closely as it could to the requirements of the law when preparing the new min-

ute book that it authorized. Hardly could the proceedings of any corporation, forced to act in the manner the Municipal Assembly of Arecibo did in this case, be attested in a more authentic way. And it was not content with this; in the same *quo warranto* proceeding some of its witnesses identified the documents before the trial judge.

That being so, could the District Court of Arecibo validly reject the evidence offered by the relator? By no means, in our opinion. There were involved originals, and originals in the natural course of things constitute the best evidence. What happens is that the Legislature, using also as a basis the natural course of things and the reality of the facts, and taking into consideration the character and scope of a public record, authorized the proof thereof through certified copies issued by the officer having the custody of such record. But this does not mean that if the original public record, by virtue of special circumstances, is offered in evidence, it should be rejected because it is the original and not a copy thereof. What the law requires in the last analysis is to have before the judge the best evidence as to the facts in controversy. The Law of Evidence condenses in its provisions the experience and knowledge of centuries in matters of proof, and enacts precise rules for the diverse and complex situations which arise in actual practice. It should not be so construed as to annul its fundamental purpose, nor as requiring that when the primary evidence is offered to the judge, he should reject it because the same does not conform to the rule provided for establishing the existence of such primary evidence without the necessity of removing it from the place where it is kept.

The question of the admissibility of the evidence regarding the proceedings of the municipal assembly in the impeachment trial having been decided in the affirmative, let us see now whether such evidence establishes that the proceedings were legal and the decreed removal valid.

The respondents maintain in the first place that it does not appear from the documents that the assembly was called in accordance with the statute, since the latter (Municipal Law of 1931, p. 608) prescribes in its section 29 that—

". . . . The municipal assembly, in order to hear and decide any accusation presented against the mayor, formulated by any member thereof, by the Governor of Porto Rico or by any citizen, may meet upon call of its president, on any date, of which the mayor shall be notified, furnishing him a copy of the charges five days in advance of the date for the hearing, and when there is a quorum for the consideration of the charges preferred against the mayor, the assembly may continue in session for such time as may be necessary to decide the case definitively; . . . ."

The whole argument rests upon the fact that the Spanish text reads "en cualquier fecha que notificará *el* alcalde" and from the documents it does not appear that the mayor did designate any date.

The English text of the law reads: "of which the mayor shall be notified," and this is correct. Any person of average intelligence, upon reading section 29 of the Municipal Law, might doubt whether what the Legislator meant was that the mayor should notify the date. If it be incumbent on the assembly to hear an accusation brought *against the mayor* and it is empowered to meet upon the call of its president, how could the notification and even the setting of the date for the hearing be left to the mayor? As the use and the meaning of the article "*el*" is doubtful, its meaning should be sought by examining and comparing it with the other related words and sentences in an orderly manner, in order to ascertain its true meaning. Section 17, Civil Code, 1930 ed. Thus we conclude that "*el*" means "*al*" and that its presence in the Spanish text of the law is the result of a clerical or typographical error which can not have the effect of completely changing the procedure to be followed.

The defendants also maintain that, since the law provides that notice of the charges shall be given "five days in ad-

vance of the date set for the hearing," and as the documents show that the charges were notified on September 3, to be heard on the 14th of the same month, the assembly had no power to act on the 14th.

In our opinion the statutory provision has not the meaning attributed to it by the defendants. The mayor should be granted at least five days and the hearing must be speedy, since the mayor may be suspended, as he was in this case, and the better practice is to set the hearing for a date not exceeding five days, but the fact that it is set for a few days beyond that time does not divest the assembly of its jurisdiction. There is nothing to show an arbitrary delay revealing an intention to keep the mayor out of his office by virtue of the suspension, without investigating the charges brought and without rendering the proper decision. In the case at bar the suspension was decreed on September 2 and notified September 3, the trial was held on the 14th, and on the 15th of the same month a final decision was rendered by the assembly.

After examining the documents offered in evidence, we find that in the calls, citations, and sessions of the assembly there was compliance with the requisites prescribed by the law. The accusation that gave rise to the proceeding was made under oath by two citizens. The assembly first met to consider it and the mayor was summoned but did not appear. The assembly decided that the accusation was sufficient and decreed the suspension of the mayor, setting a date for the hearing. The mayor was served with a copy of the accusation and also notified of the day set for the hearing, but he did not appear either. The assembly, after all the members thereof had been summoned and a sufficient number had appeared, heard the evidence adduced and rendered its final decision holding some of the charges as not proved and others as proved, and by virtue of those that were proved it decreed the removal of the mayor, which decision became final (*firme*)

inasmuch as the mayor failed to take an appeal therefrom to this Supreme Court; a direct remedy granted to him by the law. Section 29, Municipal Law of 1931, Session Laws, p. 608.

By virtue of all the foregoing, the first question at issue —that is, whether a vacancy exists in the office of Mayor of Arecibo because the defendant Sergio Seijo, who was holding said office to which he had been elected by popular vote, had been duly removed by the municipal assembly—should be answered in the affirmative.

Let us examine the second question. The defendants argue that even if the above conclusion were reached, the *quo warranto* proceeding should be dismissed, as the records show that although the relator, Dr. Mendín, had been appointed Director of Charities of the Municipality of Arecibo, by the mayor, the mayor himself preferred charges against him and suspended him from office and salary while the charges were pending investigation and determination; and therefore the substitution for the mayor, in a proper case, pertained, not to the director of health, but to the treasurer-school director in accordance with the ordinance providing for the order of such substitution adopted by the municipality.

The record shows that at the beginning of September, 1931, Seijo, in his capacity as mayor, addressed a letter to Mendín, suspending him as director of charities, and the evidence adduced by the defendants themselves in regard to the exact date of the letter and of its delivery, is conflicting. The defendants presented a copy bearing the date of September 1, and a footnote stating: "Delivered to Dr. José Mendín Sabat, at Arecibo, September 2, at 7:45 a. m. (Signed) Fco. Duprey." Dr. Mendín was called to testify, and he asserted that the letter was not delivered to him until September 4. Duprey was not called as a witness.

On September 8, Seijo addressed another letter to Mendín informing him that about two hours previously the District

Court of San Juan had issued an order suspending the effects of a resolution adopted by the municipal assembly purporting to suspend him, Seijo, from his office, and that after having investigated the facts that gave rise to the charges he had preferred against him, "several days ago," he thought it only just to let him know that he found him innocent and that he was reinstating him in his office. Dr. Mendín answered on the 9th, and on the tenth Seijo again wrote to Mendín, as follows:

". . . . Sir: I received your letter yesterday in which you notified me that you had resumed the duties of your office, but since early yesterday, when I saw you in your office, I have not seen you working as you used to in the discharge of your official duties. I hereby prefer against you the following charge: YOU HAVE ENTIRELY ABANDONED THE DUTIES OF YOUR OFFICE, ABANDONED THE SERVICE, LEAVING THE POOR WITHOUT MEDICAL ATTENDANCE AND HAVE FAILED TO DISCHARGE ANY OTHER OF YOUR DUTIES AS DIRECTOR OF CHARITIES OF ARECIBO. On this ground, abandonment, I prefer against you the above charge, and beginning today you are hereby suspended from office and salary, which action I take in the exercise of the powers conferred upon me by the Municipal Law in force . . . ."

Dr. Mendín answered defending himself, and matters remained thus without it appearing that any final action was taken.

The defendants also introduced in evidence a copy of the letter addressed by Mayor Seijo to the defendant, Antonia Brandi. It reads thus:

"Sept. 2, 1931. Mrs. Antonia Brandi de Seijo, Arecibo, P. R. Madam: In the exercise of the powers conferred upon me by the law, I hereby appoint you Treasurer-School Director of the Municipality of Arecibo, Puerto Rico, to take charge of your office today, if possible for you, before 10:00 a. m. Respectfully, (Signed) Sergio Seijo, Mayor of Arecibo."

The relator maintains that the suspensions decreed by Seijo were ineffective because Seijo was in his turn suspended from the office of mayor at the time he decreed them, while the defendants claim that, since the District Court of San

Juan had ordered the suspension of the resolution adopted by the assembly, Seijo was reinstated with all his powers, if he had lost them by the action of the assembly, and hence his order suspending Mendín was valid and is in full force and effect. ·

"The suspension of officers takes effect from the time the order is issued and notified." Applying this principle, the suspension of Seijo as mayor decreed by the municipal assembly on September 2, and notified to the mayor the next day, became effective on September 3.

We know the evidence offered by the defendants to prove the date of Mendín's suspension by Seijo. Even though the first letter of Seijo bore the date of September 1, when was Mendín notified? Between a note written by a person at the foot of a copy of a letter stating that he delivered the original September 2, and the testimony under oath of the person who received it stating that it was not September 2, but September 4, the conflict should be decided in favor of the statement under oath, especially if we consider the strange behavior of Mr. Seijo as revealed not only by his letters of the 8th and 10th of September addressed to Mendín, but also by the communication, dated September 2, which he addressed to his own wife appointing her treasurer-school director and directing that she should take charge of that office on the same day, before 10 a. m. It seems advisable to state that both of Dr. Mendín's suspensions were based on charges by Seijo himself against the doctor.

It having been established that the first suspension was not notified until the 4th, it is clear that the notice thereof was served when Seijo had already been suspended from office and, therefore, it did not have to be obeyed. But it is insisted upon that the suspension of September 10 is valid because Seijo's suspension had in its turn been stayed by the District Court of San Juan in a certain certiorari proceeding.

Indeed, when the assembly decided to act upon the charges filed with it against Seijo, the latter applied to the District Court of San Juan, praying the court to order the sending of the record and to declare the proceedings void in the meantime staying the assembly's order of suspension, which stay the court granted. Thereafter the same court discharged the writ of certiorari issued, and from this final judgment Seijo took an appeal which is still pending.

The relator in his brief argues extensively upon the nature of the writ of certiorari, both the usual remedy and the one authorized by the Municipal Law, and likewise upon the powers of the court within such proceeding. Similarly as to the effects of a judgment dismissing the petition and those of an appeal from that judgment to the Supreme Court. The defendants treat the subject amply in their brief.

We will not follow either of the parties. Whatever the power of the district court to intervene by certiorari, the fact is that it finally refused to act when it learned of the fact that the mayor had been removed from office by the assembly. The dismissed mayor had then a speedy, direct, and effective remedy before the Supreme Court, and upon his failure to exercise the same, the removal became final (*firme*). Within that remedy Seijo could and should have raised all the questions involved from the beginning to the end of the impeachment proceeding, and this Court would have determined whether the accusation was sufficient, whether the suspension decreed was proper, whether the assembly was validly constituted, whether its final decision was well founded, etc.

It was Seijo himself who accepted the action of the assembly and he can not now invoke another remedy instituted by him in which a preliminary measure had been decreed at his instance—a remedy that was subsequently dismissed as improper—in order to render ineffective in a way his removal, by eliminating the health director and making the right of substitution to vest in his own wife, appointed by him

treasurer-school director, and to whom one of the charges brought against him and declared proved by the assembly referred, thus:

"It is also a grave matter, constituting a violation of the law, and an administrative irregularity, to allow as the defendant Mayor did allow his wife, Mrs. Antonia Brandi, School Director of this Municipality, to receive various sums of money from the sale of LUNCHES in the SCHOOL DINING ROOMS of this Municipality of Arecibo, and that such money should be used without depositing it in the Municipal Treasury of Arecibo, as charged in the ninth specification of the accusation."

By virtue of all the foregoing, it must likewise be concluded that when the second suspension of Dr. Mendín was decreed by Seijo, the latter was validly suspended by the assembly and lacked authority to act.

Therefore, the second point in controversy should also be decided in the affirmative.

At the hearing of this appeal, the defendants asked that in the event this Court should reach the conclusion that the judgment rendered by the District Court of Arecibo must be reversed, the case should be remanded to the district court for further proceedings to enable them to introduce their evidence. The relator strenuously objected to this, stating that it would delay matters to such an extent that when the case were finally decided the decision could be of no avail, as the term of office for which the mayor was elected would already have expired.

With regard to the above request, the record shows the following:

"Attorney Pagán: Before I begin to introduce my evidence I wish to make it clearly appear of record that all this evidence, the documents as well as the testimony, is conditional, subject to the decision of the court as to whether or not that return is admissible.

"Judge: If the court holds that the return is not admissible all the testimony in that respect will be left without a basis.

"Attorney Pagán: I reserve the right to offer evidence in case that is not admitted.

"Attorney Rivera Zayas: That can not be. (He argued.)
"Attorney Pagán: Shall we argue that in the briefs?
"Judge: Yes, that question is to be argued in the briefs."

The defendants then proceeded to offer all the evidence they deemed proper.

If the theory of the defendants were accepted, law suits could be indefinitely prolonged. The proceeding remained subject to proof and was finally submitted to the decision of the court.

In the same way that the defendants offered what they claim to be only a part of their evidence, they could and should have presented the whole of it. They had their day in court and they have no cause for complaint.

By reason of all the foregoing, the judgment appealed from should be reversed and another rendered instead adjudging that Sergio Seijo has no right to the office of Mayor of the Municipality of Arecibo, nor to receive the honors, privileges, and emoluments of said office, nor much less to exercise the powers thereof; and that the relator, Dr. José Mendín Sabat, in his capacity as director of charities of said municipality, is entitled to temporarily (*interinamente*) discharge said office of mayor, the turn of Antonia Brandi or Augusto Padilla not having arrived as yet; and the proper writ shall issue directing the marshal of said district, in the event of opposition on the part of the defendant Sergio Seijo, to evict him from the premises occupied by the mayor's office and to install therein the relator Mendín, warning Seijo, Antonia Brandi, and Augusto Padilla not to obstruct the relator in the exercise of his office as Mayor *pro tem.* of Arecibo, under the penalties prescribed by law; with costs imposed on the defendants.

Mr. Justice Wolf took no part in the decision of this case.